IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                    No. 11 CR 2287 MV

DAVID R. MARTINEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant David R. Martinez's *Motion to Dismiss – Lack of Jurisdiction* (Doc. 30).  The Court has considered the motion, briefs, the parties' arguments, and the relevant law, and being otherwise fully informed, **FINDS** that the motion shall be **DENIED** for the reasons stated herein.

### BACKGROUND

On August 23, 2011, Defendant was charged by indictment with the following crimes in Indian Country, in violation of 18 U.S.C. § 1152: (1) armed robbery, contrary to 18 U.S.C. § 2111; and (2) assault with a dangerous weapon, contrary to 18 U.S.C. § 113(a)(3).  The instant offense occurred at Zia Credit Union, in the City of Espanola, on August 10, 2011.  Zia Credit Union is privately owned fee land within the exterior boundaries of the Santa Clara Pueblo. On December 6, 2011, Defendant pleaded guilty to Count 1 of the indictment.  On March 15, 2012, Defendant filed the instant motion to dismiss, arguing that the Court lacks jurisdiction over the offense.

**LEGAL STANDARD**

The Court may consider a motion to dismiss for lack of jurisdiction "at any time while the case is pending." FED. R. CRIM. P. 12(b)(3)(B). "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). "[T]he question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006).

**DISCUSSION**

**I.      The Parties' Arguments**

In his motion, Defendant argues that the Court lacks jurisdiction because the offense did not occur on tribal land or in Indian Country. In support of this contention, Defendant relies on the warranty deed for Zia Credit Union, which provides that Zia Credit Union is situated "within Exception 427, Private Claim 530 of the Santa Clara Pueblo Grant." Doc. 30-1. Defendant argues that "'Exception 427, Private Claim 530' is a patent to quiet title in favor of a non-Indian issued by the Pueblo Lands Board pursuant to the Pueblo Lands Act of 1924." Doc. 30 at 1-2. Defendant has also submitted a letter from the Acting Realty Officer for Santa Clara Pueblo, which provides that "Zia Credit Union, 707 Riverside Drive, Espanola, New Mexico is within the boundary of the Santa Clara Pueblo Land Grant, but is not tribal land." Doc. 30-2. Defendant relies on *United States v. Arrieta*, 436 F.3d 1246 (10th Cir. 2006), to support his argument that Santa Clara Pueblo's right and title to Zia Credit Union has been extinguished and, therefore, the charged offenses did not occur within "Indian Country" as defined by 18 U.S.C. § 1151.

The Government responds that the 2005 amendments to the Pueblo Lands Act, Public Law 109-133 (2005), codified at 25 U.S.C. § 331, Note 20, explicitly confers federal criminal jurisdiction over crimes committed on privately owned land situated within the exterior boundaries of a Pueblo.  The Government argues that the analysis in *Arrieta* is inapplicable to this case because the 2005 amendments – which conferred federal jurisdiction over privately owned land situated within the exterior boundaries of Pueblo land – did not apply retroactively to the offense in that case, which was committed prior to 2005.  Instead, the Government argues that the jurisdictional analysis in *Hydro Resources Inc. v. United States Environmental Protection Agency*, 608 F.3d 1131 (10th Cir. 2010), which analyzed the impact of the 2005 amendments, governs Defendant's motion to dismiss.  Defendant agrees with the Government that the 2005 amendments to the Pueblo Lands Act governs his motion to dismiss, but argues that the term "Except as otherwise provided by Congress" was intended to exempt from federal criminal jurisdiction all private fee land granted to non-Indians by the Pueblo Lands Board.

## II.     History of the Pueblo Lands Act

In *Arrieta*, the Tenth Circuit set forth a detailed history of the Pueblo lands of New Mexico, including the passage of the Pueblo Lands Act in 1924.  *See* 436 F.3d at 1249-50.  The United States acquired title to these lands in 1848 pursuant to the Treaty of Guadalupe Hidalgo, wherein the United States agreed to protect the rights of Indians recognized by prior sovereigns. *Id*. at 1249.  In turn, Congress extended the Indian Nonintercourse Act to Pueblo lands, prohibiting any transfer of Pueblo land except by treaty or convention.  *Id*.  However, in 1877 the Supreme Court held that Pueblos were not "Indian tribes" and therefore could alienate their land without approval from Congress.  *Id*. (citing *United States v. Joseph,* 94 U.S. 614, 618 (1876)).

This decision was later overruled, but in the interim, roughly 3,000 non-Indians acquired title to Pueblo land. *Id.*

In 1913, the Supreme Court termed the Pueblos "dependent Indian communities," entitled to the aid and protection of the federal government and subject to congressional control. *Id.* (citing *United States v. Sandoval*, 231 U.S. 28 (1913)). This new term failed to settle the status of Pueblo land, and Congress responded by enacting the Pueblo Lands Act of 1924, which established the Pueblo Lands Board to resolve conflicting claims to Pueblo lands. *Id.* (citing 43 Stat. 636). In *Arrieta*, the Tenth Circuit explained:

> [The Pueblo Lands Board] issued patents to quiet title to land in favor of non-Indians who adversely possessed land and paid taxes on the land from 1889 to 1924 or who had color of title to the land from 1902 to 1924. The Pueblos' rights to such land were extinguished. The Pueblo retained title to all lands not patented to non-Indians. Consequently, pockets of privately owned, non-Indian land lie amidst Pueblo lands.

436 F.3d at 1249-50 (citations omitted).

## III.    The Pueblo Lands Act Amendments of 2005

In 2005, Congress amended the Pueblo Lands Act to address the issue of criminal jurisdiction. The 2005 amendments provide:

SEC. 20. CRIMINAL JURISDICTION.

> (a) IN GENERAL.—Except as otherwise provided by Congress, jurisdiction over offenses committed anywhere within the exterior boundaries of any grant from a prior sovereign, as confirmed by Congress or the Court of Private Land Claims to a Pueblo Indian tribe of New Mexico, shall be as provided in this section.
> (b) JURISDICTION OF THE PUEBLO.—The Pueblo has jurisdiction, as an act of the Pueblos' inherent power as an Indian tribe, over any offense committed by a member of the Pueblo or an Indian as defined in title 25, sections 1301(2) and 1301(4), or by any other Indian-owned entity.
> (c) JURISDICTION OF THE UNITED STATES.—The United States has jurisdiction over any offense described in chapter 53 of title 18, United States Code, committed by or against an Indian as defined in title 25, sections 1301(2) and 1301(4) or any Indian-owned entity, or that involves any Indian property or interest.

4

    (d) JURISDICTION OF THE STATE OF NEW MEXICO.—The State of New Mexico shall have jurisdiction over any offense committed by a person who is not a member of a Pueblo or an Indian as defined in title 25, sections 1301(2) and 1301(4), which offense is not subject to the jurisdiction of the United States.

Pub. L. 109-133.

    Read together, sections (a) and (c) of the amendments accordingly confer federal jurisdiction over all major crimes committed "anywhere within the exterior boundaries of any grant from a prior sovereign, as confirmed by Congress or the Court of Private Land Claims to a Pueblo Indian tribe of New Mexico." Pub. L. 109-133. Defendant's motion to dismiss is premised on the argument that the clause preceding the jurisdictional grant in the 2005 amendments – "Except as otherwise provided by Congress" – exempts the land upon which the Zia Credit Union is situated from federal jurisdiction. Relying on the status of this land as private fee land, Defendant argues it falls within this clause's exception.

    Defendant's argument is foreclosed by the legislative history leading up to the passage of the 2005 amendments to the Pueblo Lands Act. Prior to the amendments' enactment, it became evident that the "pockets" of privately owned land the Tenth Circuit referenced in *Arrieta*, commonly referred to as "checkerboard" areas, caused both state and federal courts to struggle with the jurisdictional questions stemming from their uncertain land status. The grave implications of this ambiguity evidenced themselves when state and federal courts in New Mexico arrived at opposite conclusions regarding the jurisdictional status of these lands, rendering them outside the reach of either court's jurisdiction. *Compare State v. Romero*, 142 P.3d 887, 895 (N.M. 2006) (holding that privately owned fee land within the exterior boundaries of a Pueblo is Indian Country under 18 U.S.C. § 1151(b), subject to exclusive federal criminal jurisdiction) *with Arrieta*, 436 F.3d at 1251 (recognizing that prior to 2005, land whose title was

extinguished by the Pueblo Lands Board would not have satisfied the requirements for federal criminal jurisdiction).

Acknowledging the no-man's-land phenomenon that resulted from the conflicting state and federal court jurisdictional analyses governing these checkerboard areas, Representative Pete Domenici and Senator Jeff Bingaman introduced Senate Bill 279, which was subsequently signed into law as the Pueblo Lands Act Amendments of 2005. *See* 151 CONG. REC. S980-01 (Feb. 3, 2005) (statement of Rep. Domenici). Representative Domenici and Senator Bingaman introduced the 2005 amendments in response to what they termed "a serious problem in the State of New Mexico." *Id*. Representative Domenici explained:

> Read in tandem, [state and federal] court decisions lead to the result that neither Federal, State nor tribal law-enforcement officials have jurisdiction on thousands of acres of privately owned lands within the boundaries of Indian pueblos. As a result, in recent years there have been stabbings, criminal sexual-contact cases, and aggravated battery charges that have stalled in court over jurisdiction questions.
>
> The prospect of having lands in my State where anyone can commit any crime and not be prosecuted for it is untenable and something that needs to be fixed. The legislation I am introducing today clearly outlines who is responsible for trying these cases by clarifying when a crime should be prosecuted in Federal, tribal, or State court. At the same time, the bill honors tribal sovereignty.

*Id*. The proposed bill was adopted without modification.

This legislative history clarifies the purpose of the 2005 amendments: to confer federal criminal jurisdiction over all land within the exterior boundaries of Pueblo lands, including private fee land. The land at issue in the instant case is precisely among the "thousands of acres of privately owned lands within the boundaries of Indian pueblos" about which Representative Domenici and Senator Bingaman expressed concern. Based on this history, the Court must disagree with Defendant that the private status of the land in question in this offense exempts it

6

from federal jurisdiction under the "Except as otherwise provided by Congress" preface to the jurisdictional grant of the 2005 amendments.

## CONCLUSION

The Court **FINDS** that the land upon which the Zia Credit Union is situated is Indian Country as defined by 18 U.S.C. § 1151.  It is **HEREBY ORDERED** that Defendant's *Motion to Dismiss – Lack of Jurisdiction* (Doc. 30) is **DENIED**.

Dated this 28th day of November, 2012.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff:*
Niki Tapia-Brito

*Attorney for Defendant:*
Stephen P. McCue